IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYVLANIA

| | | |
|---|---|---|
| WAYNE HINKIN and<br>MOLLY HINKIN, his wife | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION--LAW |
| vs. | : | |
| | : | |
| THE J.M. SMUCKER COMPANY<br>and WAL MART STORES, INC.<br>t/d/b/a SAM'S EAST, INC. | : | JURY TRIAL DEMANDED |
| | : | |
| | : | No. _____ |
| Defendants | : | |

## COMPLAINT

The Plaintiffs, Wayne Hinkin and Molly Hinkin, his wife, by and through his counsel, Anzalone Law Offices, LLC, hereby complains against the Defendants, The J.M. Smucker Company and Wal Mart Stores, Inc., t/d/b/a Sam's East, Inc., as follows:

## INTRODUCTION

1. On April 28, 2022, the Plaintiff, Wayne Hinkin, purchased a jar of "Jif" brand peanut butter with UPC number 5150024094 and lot number 20874250315 from the Defendant, Sam's Club. The jar of Jif peanut butter was manufactured by the Defendant, The J.M. Smucker Company. On May 8, 2022, Mr. Hinkin consumed approximately 16 ounces of the peanut butter. The following day, Mr. Hinkin became violently ill with diarrhea, fever, abdominal cramps, loss of appetite, nausea, headache, lethargy, and fatigue. He continued to experience these symptoms for several weeks after. On May 20, 2022, the Defendant, Smuckers, recalled Jif peanut butter products sold in the United States due to certain products being contaminated with Salmonella. After becoming aware of the recall, Mr. Hinkin then checked to see if the peanut butter he consumed on May 8, 2022, and after which he became seriously ill, was part of the Jiff products

being recalled and learned that it was. He was eventually diagnosed with Salmonella poisoning and reactive arthropathy of a variety of areas of his body due to the poisoning.

### **The Parties**

2. The Plaintiffs, Wanye Hinkin, (hereinafter referred to as "Mr. Hinkin"), and Molly Hinkin, (hereinafter referred to as "Mrs. Hinkin") are a married couple who reside at 77 Clarks Lane, Plains, Luzerne County, Pennsylvania 18705.

3. The Plaintiffs are citizens and residents of the Commonwealth of Pennsylvania.

4. Defendant, The J.M. Smucker Company, (hereinafter referred to as "Smuckers"), is an Ohio corporation with a corporate address located at One Strawberry Lane, Orrville, Ohio, 44667-0280.

5. Defendant, Smuckers, is a citizen of and/or resident of the state of Ohio.

6. Defendant, Smuckers, is subject to this Court's jurisdiction by substantial and specific contacts within this forum.

7. Defendant, Smuckers, routinely conducts business in the Commonwealth of Pennsylvania and specifically in Luzerne County.

8. Defendant, Smuckers, has availed itself to the jurisdiction of this Court by virtue of its substantial contacts with this jurisdiction and by doing business in the Commonwealth of Pennsylvania and the County of Luzerne.

9. Defendant, Wal Mart Stores, Inc., t/d/b/a Sam's East, Inc (hereinafter referred to as "Sam's Club") is a Delaware corporation with a registered office at 702 S.W. 8th Street, Bentonville, Arkansas 72716-6209.

10. Defendant, Sam's Club, is a citizen of and/or resident of the state of Delaware and Arkansas.

11. Defendant, Sam's Club, is subject to this Court's jurisdiction by substantial and specific contacts with this forum.

12. Defendant, Sam's Club, routinely conducts business in the Commonwealth of Pennsylvania and specifically in Luzerne County.

13. Defendant, Sam's Club, has availed itself to the jurisdiction of this Court by virtue of its substantial contacts with this jurisdiction and by doing business in the Commonwealth of Pennsylvania and the County of Luzerne.

14. At all times material hereto, the Defendants acted by and through their agents, servants, workman, employees and/or ostensible agents.

## JURISDICTION

15. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1332 as there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

## FACTUAL ALLEGATIONS

16. Defendant, Smuckers, is in the business of and derives substantial revenue from designing, manufacturing, making, producing, distributing, and selling a variety of food and beverage products, including "Jif" brand peanut butter.

17. Defendant, Sams Club, is in the business of and derives substantial revenue from owning and operating numerous stores as well as an online shopping business that sells food and beverage products to consumers, including the sale of "Jif" brand peanut butter.

18. The product giving rise to this litigation is a jar of "Jif" brand peanut butter with UPC number 5150024094 and lot number 20874250315 (hereinafter referred to as the "peanut butter" and/or the "product").

19. On or about, April 28, 2022, the Plaintiff, Mr. Hinkin, purchased the above Jif brand peanut butter, from Sam's Club online.

20. On May 8, 2022, Mr. Hinkin consumed approximately 16 ounces of the peanut butter.

21. From the time of the purchase of the peanut butter until the time Mr. Hinkin consumed the same, the peanut butter was not opened, and its seal was not broken.

22. On or about May 9, 2022, Mr. Hinkin became extremely sick with diarrhea, fever, abdominal cramps, loss of appetite, nausea, headache, lethargy, and fatigue.

23. Mr. Hinkin continued to experience the above symptoms for several weeks after.

24. On May 20, 2022, the Defendant, Smuckers, recalled Jif peanut butter products sold in the United States due to certain products being contaminated with Salmonella.

25. The recall of the Jif peanut butter products were contained to products with the lot codes 1274425-2140425 which were contaminated with Salmonella.

26. Overall, the Defendant, Smuckers, recalled over 40 Jif products that were contaminated with Salmonella.

27. The Plaintiff's peanut butter that he purchased from the Defendant, Sam's Club, and that was manufactured by the Defendant, Smuckers, was in the group of products recalled by the Defendant, Smuckers, due to it being contaminated with Salmonella.

28. On May 22, 2022, the U.S. Food and Drug Administration ("FDA") and the Center of Disease Control ("CDC") informed the public that they were investigating a multistate outbreak of Salmonella infections linked to certain Jif peanut butter products.

29. On May 23, 2022, the Plaintiff, Mr. Hinkin, became aware of the recall of the Jif peanut butter products due to Salmonella.

30. After becoming aware of the recall, Mr. Hinkin then checked to see if the peanut butter he consumed on May 8, 2022, and after which he became seriously ill, was part of the Jiff products being recalled.

31. On May 23, 2022, Mr. Hinkin became aware that he consumed Jif peanut butter that was recalled due to Salmonella.

32. At no point prior to May 23, 2022 did Mr. Hinkin know or was aware that the Jif peanut butter manufactured and distributed by the Defendant, Smuckers, and sold to him by the Defendant, Sams Club, was contaminated with Salmonella.

33. As a result of consuming the Jif peanut butter that was contaminated with Salmonella, Mr. Hinkin has suffered and continues to suffer the following injuries, some of which are permanent:

      (a) diarrhea;

      (b) fever;

      (c) abdominal cramping;

      (d) nausea;

      (e) headache;

      (f) lethargy;

      (g) fatigue;

      (h) low-back pain;

      (i) hip pain;

      (j) knee pain;

      (k) bilateral finger joint pain;

      (l) reactive arthropathy due to salmonella infection;

   (m)  elbow pain and swelling;

   (n)  feet pain and swelling;

   (o)  joint pain and swelling;

   (p)  impaired iron metabolism.

  34. Mr. Hinkin's injuries were the direct and proximate result of the Defendants' negligence.

  35. As a result of the injuries Mr. Hinkin sustained, some of which are alleged to be permanent, Mr. Hinkin was required to seek medical treatment from multiple providers for which medical bills were incurred.  A claim for medical bills is being made herein.

  36. As a result of his injuries caused by the Defendants' negligence, Mr. Hinkin continues to treat and requires ongoing medical care and it is believed and averred that he will continue to require treatment into the future causing him to incur bills for the same.  A claim for future medical bills is being made herein.

  37. As a result of his injuries caused by the Defendants' negligence, Mr. Hinkin was rendered sick, sore, disabled and sustained severe mental and physical pain and great discomfort all of which required medical treatment and are alleged to be permanent.

  38. As a result of his injuries due to the Defendants' negligence, Mr. Hinkin has sustained and continues to sustain a loss of everyday pleasures and enjoyments of life for which he now makes a claim.

  39. Defendants are jointly and severally liable for the injuries and damages sustained by Mr. Hinkin as a result of this incident.

  WHEREFORE, the Plaintiff, Wayne Hinkin, hereby demands judgment in his favor and against the Defendants, The J.M. Smucker Company and Wal Mart Stores, Inc., t/d/b/a Sam's

East, Inc., in an amount in excess of the jurisdictional requirement of seventy-five thousand ($75,000.00) dollars.

## COUNT I – Negligence

### Wayne Hinkin v. The J.M. Smucker Company and Wal Mart Stores, Inc., t/d/b/a Sam's East, Inc.

40. Plaintiff, Mr. Hinkin, incorporates Paragraphs 1 through and including 40 as though the same were set forth at length herein.

41. At all times relevant, the Defendants were in the business of designing, manufacturing, marketing, selling and distributing Jif peanut butter for profit.

42. Defendants owed a duty to the public, including the Plaintiff, Mr. Hinkin, to manufacture, distribute, and sell Jiff peanut butter products that are safe and fit for human consumption.

43. Defendants knew that the public, including the Plaintiff, purchased Jiff peanut butter products for human consumption.

44. Defendants owed a duty to adequately test, inspect, and assure the quality and safety of the Jiff peanut butter placing the product into the stream of commerce.

45. Defendants owed a duty to adequately notify and warn consumers, including the Plaintiff, Mr. Hinkin, about the poisonous and dangerous nature of Salmonella-tainted food products, including Jif peanut butter.

46. Defendants had a duty to exercise a degree of care, diligence and skill in the design, manufacture, marketing, distribution and selling of Jif peanut butter products can as other manufacturers in the business at the time would have used.

47. Defendants were negligent and careless in the following respects:

(a) Selling and/or distributing Jif peanut butter products contained with Salmonella, including the Salmonella-tainted Jif peanut butter consumed by the Plaintiff, Wayne Hinkin;

(b) failing to manufacture Jif peanut butter products in a safe and reasonable manner that was free of dangerous and/or defective conditions, including the Salmonella-tainted Jif peanut butter consumed by the Plaintiff, Wayne Hinkin;

(c) failing to market and/or sell Jif peanut butter in a safe and reasonable manner that was free of dangerous and/or defective conditions, including the Salmonella-tainted Jif peanut butter consumed by the Plaintiff, Wanye Hinkin;

(d) failing to warn the consumers of the salmonella-tainted Jiff peanut butter, including Mr. Hinkin, of the defective condition of the product;

(e) failing to design and/or manufacture the Jiff peanut butter in a safe manner to prevent personal injuries such as those sustained by Mr. Hinkin;

(f) failing to adequately and properly design, manufacture, assemble and test the Jiff peanut butter;

(g) failing to unambiguously warn purchasers and consumers of the Jif peanut butter, including Mr. Hinkin, of the defective, hazardous and unreasonably dangerous conditions relating to its design, manufacture and assembly, which they knew or should have know through the exercise of ordinary care;

(h) failing to make reasonable tests and/or inspections to discover the defective, hazardous and unreasonably dangerous conditions relating to the Salmonella-tainted Jiff peanut butter as described above;

   (i) failing to promptly notifying the consuming public, including Mr. Hinkin, of the Salmonella contamination of Jiff peanut butter products

   (j) failing to remove the salmonella-tainted peanut butter from the marketplace in a prompt manner;

   (k) failing to properly communicate with co-Defendants on the hazards existing with the product;

   (l) improperly storing the Jiff peanut butter prior to sale to the end-user or consumer of the product such that its safety was compromised;

   (m) improperly handling the Jif peanut butter prior to sale to the end-user or consumer of the product such that its safety was compromised;

   (n) exposing the Jif peanut butter to improper conditions and temperatures prior to sale to the end-user or consumer of the product such that its safety was compromised; and,

   (o) selling the Jiff peanut butter to the end-user and/or consumer, specifically, Mr. Hinkin, when they had improperly stored, handled and/or exposed the peanut butter to conditions rendering the peanut butter a danger to Mr. Hinkin.

48. Defendants failed to use a degree of care, diligence and skill as other peanut butter manufacturers and sellers in similar circumstances.

49. Defendants' acts and/or omissions were a substantial factor, a factual cause and/or increased the risk of harm to Mr. Hinkin's serious and permanent injuries.

50. Defendants' negligence as alleged herein was the proximate cause of Mr. Hinkin's injuries.

WHEREFORE, the Plaintiff, Wayne Hinkin, hereby demands judgment in his favor and against the Defendants, The J.M. Smucker Company and Wal Mart Stores, Inc., t/d/b/a Sam's East, Inc. in an amount in excess of the jurisdictional requirement of seventy-five thousand ($75,000.00) dollars.

## COUNT II – Product Liability

## Wayne Hinkin v. The J.M. Smucker Company and Wal Mart Stores, Inc., t/d/b/a Sam's East, Inc.

51.     Plaintiff, Mr. Hinkin, incorporates Paragraphs 1 through and including 51 as though the same were set forth at length herein.

52.     Defendants were in the business of designing, manufacturing, assembling, marketing, selling and distributing peanut butter such as the subject Jiff peanut butter for use by consumers such as Mr. Hinkin.

53.     Defendants, by and through their agents, servants, workmen, contractors, designed, assemblers, manufacturers, sellers, suppliers and/or distributors, are strictly liable under § 402A of the Restatement (Second) of Torts because:

   (a)     Defendants are engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing and/or placing into the stream of commerce peanut butter, including the Jif peanut butter that injured Mr. Hinkin;

   (b)     The product involved in the subject incident was marketed and/or placed in the general stream of commerce by Defendants;

   (c)     The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed and/or placed in the stream of commerce;

10

(d)  The product was designed, assembled, manufactured, sold, supplied, distributed and/or placed into the stream of commerce in the defective condition for the reasons set forth above.

54.  The Jif peanut butter was defective and/or unreasonably dangerous at the time the Jif peanut butter was designed, assembled, manufactured, sold supplied, distributed and/or placed in the stream of commerce by the Defendants.

55.  The Jif peanut butter was in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by Jif peanut butter outweighed the burden or costs of taking precautions.

56.  Defendants breached their duties, by and through their agents, servants, workmen and/or employees, and are jointly and severally negligent in the performance of their obligations.

57.  The defective condition of the Jif peanut butter caused Mr. Hinkin's injuries.

58.  Defendants are strictly liable to Mr. Hinkin.

WHEREFORE, the Plaintiff, Mr. Hinkin, hereby demands judgment in his favor and against the Defendants, The J.M. Smucker Company and Wal Mart Stores, Inc., t/d/b/a Sam's East, Inc., in an amount in excess of the jurisdictional requirement of seventy-five thousand ($75,000.00) dollars.

## **COUNT III – CONSORTIUM**

### **Molly Hinkin v. The J.M. Smucker Company and Wal Mart Stores, Inc., t/d/b/a Sam's East, Inc.**

59.  The Plaintiffs, Wanye Hinkin and Molley Hinkin, his wife, hereby incorporate paragraphs 1 through 59 as though the same were set forth at length herein.

60.     As a result of the injuries that her husband, Wanye Hinkin, sustained, Molly Hinkin was denied the care, comfort, society and companionship of her husband, and a claim for consortium is hereby made.

WHEREFORE, the Plaintiff, Molly Hinkin, hereby demands judgment in her favor and against the Defendants, The J.M. Smucker Company and Wal Mart Stores, Inc., t/d/b/a Sam's East, Inc., in an amount in excess of the jurisdictional requirement of seventy-five thousand ($75,000.00) dollars.

                              ANZALONE LAW OFFICES, LLC

                BY:     /s/ Jamie Joseph Anzalone
                              JAMIE J. ANZALONE, ESQUIRE
                              PA ID: 202764
                              KELLY M. CIRAVOLO, ESQUIRE
                              PA ID: 200565
                              Attorneys for Plaintiff,

## **VERIFICATION**

We, WAYNE HINKIN and MOLLY HINKIN, Plaintiffs herein, certify that the statements contained in the foregoing Complaint are true and correct and are made subject to the penalties of 18 Pa. C.S.A. Section 4904, relating to unsworn falsification to authorities.

_____
WAYNE HINKIN

_____
MOLLY HINKIN